UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                    )
NIDYA CABRERA                                       )
                                                    )
                    Plaintiff,                      )          CIVIL ACTION NUMBER:
                                                    )          _____
        v.                                          )
                                                    )          JURY TRIAL DEMANDED
SWISSBIT NA, INC.,                                  )
                                                    )
                                                    )
                    Defendants.                     )
_____)

## COMPLAINT AND JURY DEMAND

## PARTIES

1.      The Plaintiff, Nidya Cabrera ("Ms. Cabrera" or the "Plaintiff"), is an adult woman

and a resident of the State of New York.

2.      Defendant Swissbit NA, Inc. is a for-profit corporation doing business in the state

of New York.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§1331 because Plaintiff has brought claims pursuant to the Americans with Disabilities Act (the

"ADA") and the Family and Medical Leave Act ("FMLA"). The court may exercise

supplemental jurisdiction over the Plaintiff's state and city law claims. 28 U.S.C. §1367.

4.      This court has personal jurisdiction over the Defendant because the Defendant has

engaged in and transacted business in the State of New York, including by managing and/or

operating a business in New York and/or employing the Plaintiff in New York, and Plaintiff's

causes of action stem largely from the Defendant's business transactions within the State of New

York. Indeed, the Plaintiff was employed by the Defendant at 36 Lafayette Drive, Port Chester, New York 10573 in the State of New York, was managed and supervised by the Defendant in the State of New York, was discriminated against by the Defendant in the State of New York, and was terminated by the Defendant in the State of New York.

5.      Venue is appropriate in the Southern District of New York as the Defendant's acts and omissions giving rise to the claims in this Complaint occurred in the Southern District of New York. Indeed, Ms. Cabrera worked for the Defendant, and was fired by the Defendant in Port Chester, New York, which is within the Southern District of New York.

## STATEMENT OF FACTS

6.      On or around November 29, 2005, Ms. Cabrera was hired by the Defendant in as an accountant and administrator working in the Defendant's Port Chester, NY office.

7.      At all relevant times, the Company employed 15 or more employees during 20 or more calendar weeks during the relevant calendar years.

8.      As such, the Defendant was an employer under the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq. ("ADA") and the New York Labor Law § 196-b ("New York sick leave law") .

9.      At all relevant times, Ms. Cabrera suffered from generalized epilepsy (also known as focal epilepsy) and juvenile myoclonic epilepsy.

10.      Ms. Cabrera's generalized epilepsy is an impairment that substantially limits one or more of her major life activities, especially during periods of symptom flare-ups, including, but not limited to, walking, sleeping, caring for herself, and engaging in physical activity. Additionally, Ms. Cabrera's generalized epilepsy is an impairment which significantly limits one

or more major bodily functions, including her neurological and brain functions. As such, at all relevant times, Ms. Cabrera's generalized epilepsy was a disability under the ADA.

11.     At all relevant times, Ms. Cabrera was a qualified individual with a disability under the ADA.

12.     Ms. Cabrera's juvenile myoclonic epilepsy is an impairment that substantially limits one or more of her major life activities, including, but not limited to, walking, sleeping, caring for herself, and engaging in physical activity. Additionally, Ms. Cabrera's juvenile myoclonic epilepsy is an impairment which significantly limits one or more major bodily functions, including her neurological and brain functions. As such, at all relevant times, Ms. Cabrera's juvenile myoclonic epilepsy was a disability under the ADA.

13.     At all relevant times, Ms. Cabrera was a qualified individual with a disability under the ADA.

14.     At all relevant times, Ms. Cabrera was a qualified employee, and her performance was satisfactory.

15.     Indeed, at all relevant times, Ms. Cabrera possessed the requisite qualifications and certifications for her position with the Defendant.

16.     After Ms. Cabera's hiring, the Defendant's management team often praised her performance, including during annual performance reviews.

17.     In or around 2011, Ms. Cabrera experienced a seizure at work.

18.     Shortly thereafter, Ms. Cabrera disclosed her epilepsy disabilities to Anthony Cerreta ("Cerreta"), who at that time was president of the Company.

19.    Upon information and belief, Cerreta was not disabled, was not regarded as disabled by the Defendant, and during employment by the Defendant had not requested or utilized protected leave.

20.    In or around 2017, Defendant's West Chester, NY location began operating fully remotely. Therefore, Ms. Cabrera began working from home.

21.    In or around the beginning of 2018, Ms. Cabrera began experiencing additional seizures.

22.    These seizures, including the unpredictable nature of these seizures, caused heightened feelings of stress and despair as well as insomnia. Given these additional symptoms, Ms. Cabrera sought further treatment and was eventually diagnosed with generalized anxiety disorder and major depressive disorder.

23.    Ms. Cabrera's generalized anxiety disorder is an impairment that substantially limits one or more of her major life activities, but not limited to, sleeping, concentrating, and caring for herself. Additionally, Ms. Cabrera's generalized anxiety disorder is an impairment which significantly limits one or more major bodily functions, including her neurological and brain functions. As such, at all relevant times, Ms. Cabrera's generalized anxiety disorder was a disability under the ADA.

24.    At all relevant times, Ms. Cabrera was a qualified individual with a disability under the ADA.

25.    Ms. Cabrera's major depressive disorder is an impairment that substantially limits one or more of her major life activities, including, but not limited to, sleeping, concentrating, and caring for herself. Additionally, Ms. Cabrera's major depressive disorder is an impairment which significantly limits one or more major bodily functions, including her neurological and brain

functions. As such, at all relevant times, Ms. Cabrera's major depressive disorder was a disability under the ADA.

26.    At all relevant times, Ms. Cabrera was a qualified individual with a disability under the ADA.

27.    In or around May 2018, Ms. Cabrera met with Benjamin Schuler ("Schuler"), the Chief Financial Officer for the Company, and Martin Mika ("Mika"), accountant.

28.    Upon information and belief, Schuler was not disabled and was not regarded as disabled by the Defendant.  Further, upon information and belief, during Schuler's employment by the Defendant, Schuler had not requested or utilized protected leave.

29.    Upon information and belief, Mika was not disabled and was not regarded as disabled by the Defendant. Further, upon information and belief, during Mika's employment by the Defendant, Mika had not requested or utilized protected leave.

30.    During this May 2018 meeting, Ms. Cabrera disclosed her disabilities and their related symptoms.

31.    Schuler and Mika seemed annoyed by these disclosures.

32.    Over the next several years, Ms. Cabrera's disability-related symptoms persisted. Specifically, she began feeling heightened anxiousness and suffered from seizures more often.

33.    On or around June 23, 2022, Ms. Cabrera requested from Schuler and Mika the reasonable disability-related accommodation of a continuous medical leave from in or around July 2022 to in or around early September 2022 in order to received medical treatment, rest, and manage her ongoing disability-related symptoms.

34.    Notably, this request, in addition to being a request for a disability-related accommodation, was also protected by the New York sick leave law.

35.    Schuler and Mika approved Ms. Cabrera's request, and she utilized this accommodation.

36.    However, shortly after Ms. Cabrera's protected leave began, Schuler began contacting her frequently with demands to work or provide training for the workers temporarily taking her place.

37.    Therefore, by forcing Ms. Cabrera to do work while out on medical leave, Schuler clearly revoked the reasonable disability-related accommodation request he had granted without engaging in an interactive dialogue as required by applicable law.

38.    Indeed, Ms. Cabrera was forced to perform work for the Company during approximately fifty percent or more of the working days on which she was supposed to be on a disability-related medical leave of absence.

39.    On or around September 5, 2022, Ms. Cabrera returned to work at the Company on a full-time basis as scheduled.

40.    During Ms. Cabrera's disability-related medical leave, Lucie Novakova ("Novakova") joined the Company.

41.    Schuler told Ms. Cabrera that Novakova had joined the Company in order to assist her.

42.    Because Ms. Cabrera's performance had remained satisfactory, it appeared that Novakova was hired to replace Ms. Cabera.

43.    Around this time, Novakova began asking Ms. Cabera a bizarre number of questions about her sleep.

44.    It was clear from this line of questioning that Ms. Cabrera's coworkers and managers were talking about her disability and related symptoms.

45.     In response, Ms. Cabrera disclosed her epilepsy to Novakova.

46.     Novakova acknowledged Ms. Cabrera's disclosure.

47.     In or around July 2023, Ms. Cabrera suffered a seizure at work, which caused her to fall to the ground, slam her face into the ground, and break her nose.

48.     After recovering from the seizure, Ms. Cabrera requested from Schuler and Mika the reasonable disability-related accommodation of taking the rest of the day off work to recover from her seizure.

49.     Schuler and Mika approved Ms. Cabrera's request, and she utilized this accommodation.

50.     Shortly thereafter, Ms. Cabrera continued suffering from seizures with increased frequency.

51.     Notably, these seizures occasionally happened while at work and were highly visible, but Ms. Cabrera was typically able to sense a seizure coming on and thus was typically able to take a break and get into a safe position before a seizure started.

52.     As such, it was further clear to Ms. Cabrera's coworkers, her supervisors, and the Company that Ms. Cabrera was suffering from a disability and was disabled.

53.     In or around early September 2023, Ms. Cabrera visited specialists in epileptic disorders to seek further treatment. Her doctors recommended that she undergo a weeklong medical observation.

54.     Shortly thereafter, Ms. Cabrera requested the reasonable disability-related accommodation of a weeklong medical leave to undergo the medical observation per her doctors' recommendation.

55.    Schuler and Mika approved Ms. Cabrera's request, and she utilized this accommodation from on or around September 11, 2023 to on or around September 16, 2023.

56.    At the end of this observation, Ms. Cabrera's doctors determined that she required surgery in order for a Vagus Nerve Stimulator (VNS) implant to be inserted, which would help manage her disability.

57.    Therefore, Ms. Cabrera informed the Company that her doctors had ordered disability-related surgery, and she requested from Schuler the reasonable disability-related accommodation of an approximately one week long medical leave to undergo surgery and recuperate.

58.    Schuler denied Ms. Cabrera's request, and asserted there was work that he felt should be completed.

59.    Ms. Cabrera raised protected concerns to Schuler and attempted to engage with him in an interactive dialogue concerning her reasonable disability-related accommodation request, including by offering to move the surgery to a different time.

60.    Despite this, Schuler again denied her request outright and refused to engage in an interactive dialogue to consider alternative accommodations in violation of applicable law.

61.    Shortly thereafter, Ms. Cabrera again requested a brief medical leave to undergo medically necessary surgery from on or around November 30, 2023 to on or around December 4, 2023.

62.    Schuler approved this request.

63.    Accordingly, Ms. Cabrera had no choice but to both delay her surgery until late November 2023 and forego most of the recovery period recommended by her surgeon.

64.     On or around November 30, 2023, Ms. Cabrera underwent surgery for her epilepsy.

65.     Ms. Cabrera took the day of the surgery and the day after off from work (as an accommodation for her disability) and returned to work the following business day (which was on or around December 4, 2023).  This time off was a protected disability-related leave under the ADA, similar state laws, and other relevant leave laws.

66.     As a result of Schuler and the Company's pressure and denial of the longer leave of absence she had requested, Ms. Cabrera was not able to take the full time to recover as recommended by her doctors.

67.     Upon Ms. Cabrera's return to work, Schuler and Mika's discriminatory animus against her clearly deepened. Indeed, they often refused to answer her questions and excluded her from important meetings.

68.     Notably, Ms. Cabrera was not excluded from these meetings previously, and information was shared in these meetings that helped her complete her job duties.

69.     Therefore, for the remainder of Ms. Cabrera's tenure with Defendant, she raised protected concerns about this disparate treatment to Schuler, Mika, and the Company's Human Resources department, specifically stating she felt that she was being treated unfairly, which she believed was due to her disabilities and/or as retaliation for requesting/utilizing reasonable accommodations.

70.     Schuler, Mika, and Human Resources consistently told Ms. Cabrera they could not assist her with her protected concerns and she needed to contact a different department.

71.    Upon information and belief, both management and Human Resources were able to meaningfully address protected concerns about discrimination, Therefore, Defendant appeared to be intentionally dismissing Ms. Cabrera's protected concerns.

72.    Additionally, Ms. Cabrera continued to request from Schuler and Mika occasional days off when she experienced disability-related flareups.

73.    Schuler and Mika consistently told her she would have to work for several hours on these days, thereby denying her requests without engaging in an interactive dialogue as required by law.

74.    In or around early April 2024, Ms. Cabrera again raised protected concerns to Human Resources about the disparate treatment she was being subjected to.

75.    Shockingly, the Human Resources representative Ms. Cabrera spoke to told her that only Defendant's administrative team could address these protected concerns.

76.    Ms. Cabrera contacted Defendant's administrative team and reiterated her protected concerns.

77.    The employee Ms. Cabrera spoke to told her she needed to contact Defendant's Human Resources department.

78.    It was clear Ms. Cabrera was intentionally being given the runaround, and had for around four (4) months prior.  Indeed, it was clear the Defendant had no intention of addressing her protected concerns.

79.    On or around April 18, 2024, Ms. Cabrera acted within her normal job duties to attempt to fix her broken Company phone.

80.    After attempts to fix the phone were unsuccessful, Ms. Cabrera traded in the phone and purchased the most similar replacement model for about $400.

81.    Importantly, this procedure was in keeping with instructions Ms. Cabrera had received about the Company's policy during her tenure of almost 20 years with the Company.

82.    On or around April 25, 2024, Lisa Debrum ("Debrum"), a Human Resources specialist, and Schuler informed Ms. Cabrera that she was being terminated, allegedly for not getting approval for the phone.  These accusations were not accurate, as Ms. Cabrera had not done anything wrong.

83.    Upon information and belief, Debrum is not disabled, has not disclosed disability conditions to the Company and is not regarded as disabled by the Company.  Further, upon information and belief, Debrum has not requested or utilized reasonable accommodations.

84.    As such, Ms. Cabrera was involuntarily terminated from her position with the Company on or around April 25, 2024.

85.    Notably, Ms. Cabrera was not offered progressive discipline, which was afforded to other employees. Indeed, the Company routinely utilizes progressive discipline for non-disabled employees, including when they are accused or misconduct more serious than that which Ms. Cabrera was accused of.

86.    Upon information and belief, Ms. Cabrera was replaced by a nondisabled individual.

87.    On or around October 1, 2024, Ms. Cabrera timely filed a Charge of Discrimination (the "Charge") with the New York State Division of Human Rights ("NYSDHR"), which was cross-filed with the Equal Employment Opportunity Commission (the "EEOC").

88.    On or around July 7, 2025, the NYSDHR dismissed Ms. Cabrera's Charge, thus allowing her to pursue her claim in court.

89.     Ms. Cabrera notified the EEOC of her intent to file a complaint in court and, accordingly, requested that the EEOC issue Ms. Cabrera a right to sue letter.

90.     The EEOC issued Ms. Cabrera a Right to Sue notice on or around September 30, 2025, which she received on or around October 6, 2025.

91.     This lawsuit is timely filed.

## COUNT I

**(Failure to Accommodate and Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. Defendant**

92.     Ms. Cabrera incorporates all paragraphs above and below as if set forth fully herein.

93.     During all relevant times, the Company was an employer under the ADA because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

94.     Ms. Cabrera suffers (and at all relevant times suffered) from disabilities (generalized epilepsy, juvenile myoclonic epilepsy, generalized anxiety disorder, and major depressive disorder). This disability substantially limits one or more of her major life activities, including as set forth above. This disability further substantially limits the operations of one or more of her major bodily functions, including as set forth above. Accordingly, Ms. Cabrera's epilepsy was a disability, and she is a qualified individual with a disability under the ADA.

95.     At all relevant times, Ms. Cabrera was a qualified employee and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

96.     Ms. Cabrera disclosed her disabilities to the Defendant, and/or the Defendant was aware of Ms. Cabrera's disabilities, and/or the Defendant regarded Ms. Cabrera as disabled.

97.     Ms. Cabrera requested and/or utilized disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included, but were not limited to, disability-related time off related to medical treatment and recovery from treatment and symptom flare-ups.

98.     Ms. Cabrera's requested disability-related accommodations did not pose an undue burden on Defendants.

99.     The Defendant denied one or more of Ms. Cabrera's requested disability-related accommodations and refused to engage in an interactive dialogue regarding other possible accommodations.

100.    The Defendant discriminated against Ms. Cabrera due to her disabilities by subjecting Ms. Cabrera to adverse actions, including, but not limited to, a hostile and harassing work environment, lack of progressive discipline, denial of accommodations, and terminating Ms. Cabrera's employment.

101.    Upon information and belief, the Defendant replaced Ms. Cabrera with a lesser or similarly qualified, non-disabled employee.

102.    The Defendant's actions were willful, wanton, reckless, and/or involved a conscious disregard of the rights of Ms. Cabrera and/or conduct so reckless as to amount to such disregard.

103.    As a direct and proximate result of the Defendant's violations of the ADA, Ms. Cabrera has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

104.    Ms. Cabrera seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), damages for diminished earning capacity and injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional distress and pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, reinstatement with full seniority and benefits, attorneys' fees, interest, and costs.

## COUNT II

### (Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)

### Plaintiff v. the Defendant

105.    Ms. Cabrera incorporates all paragraphs above and below as if set forth fully herein.

106.    Ms. Cabrera engaged in protected activity under the ADA, including, but not limited to: (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding hostile work environment harassment; (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the discriminatory and retaliatory actions taken by the Defendant due to Ms. Cabrera's (i) requesting and utilizing accommodations for her disability and/or (ii) expressing concerns that the Company was denying, or retaliating against her for using, reasonable accommodations.

107.    The Defendant denied one or more of Ms. Cabrera's requested disability-related accommodations and refused to engage in an interactive dialogue regarding other possible accommodations.

108.    The Defendant unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Cabrera's exercising of, or enjoyment of, one or more rights granted by the ADA.

109.    More specifically, the Defendant subjected Ms. Cabrera to adverse actions because she engaged in activities protected by the ADA, including but not limited to, the aforementioned protected activity, by subjecting Ms. Cabrera to adverse actions including, but not limited to: a severe and pervasive hostile, harassing, discriminatory work environment; denying Ms. Cabrera disability-related accommodations; denying Ms. Cabrera the benefit of sufficient progressive discipline prior to termination; and/or, the termination of Ms. Cabrera's employment because of her disability.

110.    The Defendant acted with malice and/or with reckless indifference to the federally protected rights of Ms. Cabrera.

111.    As a direct and proximate result of the Defendant's violation of the ADA, Ms. Cabrera has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

112.    Ms. Cabrera seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional distress and pain, suffering, inconvenience, mental anguish, loss of enjoyment

of life, and other nonpecuniary losses), reinstatement with full seniority and benefits, injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT III

### Plaintiff v. Defendant

### (Retaliation in Violation of New York Whistleblower Law, NY Labor Law § 740)

### Plaintiff v. the Defendant

217.    Ms. Cabrera incorporates all paragraphs above and below as if set forth fully herein.

218.    Ms. Cabrera engaged in protected activity under New York Labor Law Section 740, including by taking protected leave under the New York sick leave law and protesting Respondent's failure to provide her the leave she was statutorily entitled to by state law.

219.    The Defendant retaliated against Ms. Cabrera with adverse actions, including, but not limited to: a severe and pervasive hostile, harassing, discriminatory work environment; denying Ms. Cabrera disability-related accommodations; denying Ms. Cabrera the benefit of sufficient progressive discipline prior to termination; and/or, the termination of Ms. Cabrera's employment because of her disability.

220.    As a direct and proximate result of the Defendant's violations of the New York Labor Law Section 740 Ms. Cabrera has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

221.    Ms. Cabrera seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, compensatory damages (including, but not

limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

## COUNT IV

### Plaintiff v. Defendant

### (Retaliation in Violation of N.Y. Lab. Law § 215)

222.    Ms. Cabrera incorporates all paragraphs above and below as if set forth fully herein.

223.    Ms. Cabrera's disabilities (including her generalized epilepsy, juvenile myoclonic epilepsy, generalized anxiety disorder, and major depressive disorder) were serious health conditions which qualified her for leave protected under state law.

224.    Ms. Cabrera notified the Defendants that she needed to take a legally protected absence pursuant to state and/or city law.

225.    Ms. Cabrera's right to take a disability-related leave was protected under New York law, including, but not limited to, the New York sick leave law.

226.    Ms. Cabrera took one or more legally protected absences which were protected pursuant to state law.

227.    The Defendant retaliated and/or discriminated against Ms. Cabrera for her legally protected absence pursuant to state law by subjecting Ms. Cabrera to adverse actions, including, but not limited to, subjecting Ms. Cabrera to a harassing and otherwise hostile work environment and/or terminating Ms. Cabrera's employment.

228.     As a direct and proximate result of the Defendant's violation of N.Y. Lab. Law §215, Ms. Cabrera has suffered and continues to suffer damages, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, punitive damages, interest, attorneys' fees, and costs.

**COUNT V**

**Plaintiff v. Defendant**

**(Failure to Pay Wages in Violation of N.Y. Lab. Law § 191, 193, and 198)**

229.     Ms. Cabrera incorporates all paragraphs above and below as if set forth fully herein.

230.     From in or around late June 2022 to early December 2022, Ms. Cabrera took a continuous medical leave from work. However, Defendant insisted that she complete several duties during this time period. Ms. Cabrera was not paid for this work.

231.     Under N.Y. Comp. Codes R. & Regs. Tit. 12 §§ 142-2.3, an employee who by request or permission of the employer reports for work on any day shall be paid for at least four hours, or the remainder of hours in the regularly scheduled shifts, whichever is less, at the basic minimum hourly wage.

232.     Accordingly, Ms. Cabrera is entitled to four hours of pay for each of the days she worked during this time period.

233.    Indeed, as of present, the Defendant has not paid, and Ms. Cabrera has not received, the remaining pay for the hours she worked.

234.    As a direct and proximate result of the Defendant's acts or omissions, Ms. Cabrera has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits and interest.

235.    Ms. Cabrera seeks all damages to which she is entitled, including, but not limited to, unpaid wages, lost compensation and benefits, liquidated damages, interest, attorney fees, and costs.

WHEREFORE, the Plaintiff, Nidya Cabrera, respectfully requests that this honorable court:

    A.  Schedule this matter for trial by jury;

    B.  Find the Defendant liable on all counts;

    C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay),

    D.  Award the Plaintiff other monetary damages, including, but not limited to, damages for her diminished earning capacity and injury to reputation;

    E.  Award the Plaintiff emotional distress damages;

    F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    G.  Award the Plaintiff punitive damages;

    H.  Award the Plaintiff her reasonable attorneys' fees;

I.    Award the Plaintiff interest and costs;

J.    Award, and order, reinstatement of the Plaintiff to her position with the Company, along with restoration of full seniority and benefits;

K.    Award the Plaintiff all other damages to which she is entitled; and

L.    Grant such further relief as is just and equitable.

Respectfully Submitted,

NIDYA CABRERA

By her attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: 11/26/2025                    By:    */s/ Lillie Goldman*

Lillie Goldman
Lillie@wyattelgaservices.com
New York State Bar: 6158638

Benjamin J. Wyatt
BWyatt@wyattlegalservices.com
New York State Bar: 5604590

Michael Varraso
MVarraso@wyattlegalservices.com
New York State Bar: 5619291

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
69 State Street, 13th Floor
Albany, NY 12207